Church, Ch. J.
The learned counsel for the appellant is undoubtedly right in the position that if, as between the plaintiff and Van Alen & Rice, there was no trust impressed upon the deposit in the bank, defendant, to an amount equal to the proceeds of the bonds sold by Van Alen & Rice for the plaintiff, this action cannot be maintained. It is settled that the holder of a check cannot maintain an action against the drawee, after a refusal to pay, for want of privity, and that a check against a general bank account does not operate as an assignment. (46 N. Y., 82; 10 Wal., 152, and cases there cited.) This action is based upon another principle equally well settled, viz., that so long as money or property belonging to the principal or the proceeds thereof may be traced and distinguished in the hands of the agent or his representatives or assignees, the principal is entitled to recover it unless it has been transferred for value without notice. (2 Grattan, 544; Pennell v. Deffell, 4 D. Gex., M. & G., 372 ; 6 Jones Eq. R., 34; 2 H. & M., 417; 2 Kent’s Com., 796, 801.) It appears to me clear that Van Alen & Rice were the agents of the plaintiff to sell the bonds, and were bound to keep the proceeds of the same for him. He owned the bonds, directed their sale, and also directed that the proceeds should be kept for him in a particular manner, and he was notified by Van Alen & Rice that they had been sold and the avails placed and would be kept as directed. These undisputed facts establish the relation of trustee and cestui que t/rust between the plaintiff and Van Alen & Rice as to the proceeds of these bonds.
It is claimed, however, that this principle is not applicable because the identical money for which the bonds were sold was not deposited. This objection would be fatal if there had in fact been no substitution of other money for the pro *5 ceeds of the bonds. It seems to have been assumed on the trial that the check given upon the sale of the bonds was used by Van Alen & Rice for their own benefit, and if the evidence had stopped there the trust fund would have been gone and dissipated, and of course beyond the reach of being traced. But the uncontradicted evidence is, that on the same day Van Alen & Rice substituted other money for that obtained for the bonds, and placed it in the bank defendant to their credit to be retained for the plaintiff, as arranged between them, and notified the plaintiff thereof. The letter of the 21st of February to the plaintiff, in connection with the evidence of Gr. R. Van Alen, is conclusive that the money referred to in the letter was that deposited in the bank defendant. The point made is this: A. having $100, the' proceeds of a sale of property of B., intends to place it in a repository and keep it for B., and instead of putting the identical bank bills in the designated place substitutes others of the same amount and keeps them for B. as such proceeds, can there be a doubt that the $100 thus substituted would occupy the same position as the particular bills obtained for the property, and that they would be impressed with the same trust? Suppose Van Alen & Rice had got the check cashed by a third person and deposited the money, it would of course be regarded as the proceeds of the check, and belong to the plaintiff as effectually as the check itself. Does it make any difference whether the money was obtained from a third person upon the check or from the safe of Van Alen & Rice? In either case the money is the proceeds of the check and stands in lieu of it. It is said that the secret intention of Van Alen & Rice cannot effect such a result. Between them and the defendant as to the substitution it was not secret. They in substance notified the plaintiff that they had placed on deposit the proceeds of his bonds and would keep it for him. They did deposit the amount which they treated as the proceeds, and declared it to be such. Can they deny it ? Can any one for them ? If I send a note to an attorney to collect, and deposit the money *6 in a bank in his own name and keep it for me, is my title to the money impaired because he fails to deposit the identical bills ? My agent collects $100 rent for me and puts the bills in one pocket and takes the same amount from another pocket and deposits it and notifies me. Are my rights gone by the change of money ? 1 think not. Stripped of unsubstantial forms, the case presented is that of a person delivering stock or bonds to an agent for sale with directions to deposit the proceeds in a bank to the credit of the agent, but to keep it in that w;ay for him, and the agent follows the directions. Gan there be a doubt as to the ownership of the' money as between the agent and, the principal ? Clearly not. Suppose the principal had directed the agent to loan the money on a note or mortgage, would not the security belong to the principal % The bank defendant upon receiving the deposit became the debtor ostensibly to the depositor, but equitably to the real owner. The obligation incurred by the bank was to pay the money on demand in the usual course of business, and had a right to require a check from the depositor. When this formality was complied with and the bank was notified that the money actually belonged to the plaintiff, it did not lie in its mouth to set up a want of privity. Privity has nothing to do with the question. The bank had the plaintiff’s money and gave its obligation in form to another person, but the obligation was in fact owned by the plaintiff and he can enforce it. There is no mystery or sanctity respecting the obligations of a bank in such a case, different from those of a private person, and if this money had been loaned to the latter under an agreement to repay it upon the presentation of the ag'ent’s check, he would not have been heard to say when the plaintiff presented the check, “I made no contract with you, and although I have no claim to the money yon cannot maintain an action because there is no privity between us and the check does not operate as an assignment.” The answer would be that the plaintiff owned the obligation, and had the same right to recover it as he would if the person had possession of his horse and *7 refused to deliver it on demand. The only effect of the direction to deposit in a particular manner was to relieve the agent upon complying with the direction from liability for loss without his fault. In the absence of such a direction the principal, while he might pursue and claim the money, would not have been obliged to do so, and could have also held the agent personally.
It is objected also that the money was so mingled with the agent’s own money as not to be traceable in the hands of the defendant. When Van Alen & Bice deposited this money for the plaintiff they included with it a few dollars of their own. But this does not affect the plaintiff’s right to it. When a trustee deposits trust moneys in his own name in a bank with his individual money, the character of the trust money is not lost but it remains the property of the cestui que trust. If such money can be traced into the bank, and it remains there, the owner can reclaim it. When deposited, the bank incurred an obligation to repay it, which is not lessened or impaired because it incurred, at the same time, an obligation to pay other money belonging to the agent individually. If A. sells B.’s horse for $100, and puts it in a box with $100 of his own, the $100 of B. may be claimed by him although the particular bills constituting it could not bé identified. So if the same $200 were deposited in a bank to the credit of A., the title of B. to $100 would not be affected by the association, and the bank would owe that money to B. in equity, although it owed A. also for his individual money. These views are not only consonant with integrity and justice, but are fully sustained by authority.
The case of Pennell v. Deffell (4 De Gex., M. & G., 372) is a leading and very instructive case upon this whole subject. It was a contest between the successor of one Green, an official assignee in bankruptcy, and the personal representatives of Green for moneys standing to his individual credit in The Bank of England and another bank. These moneys had been deposited from time to time by Green, and consisted of funds received by him in his official capacity as *8 trustee and Ms own individual funds. The account was kept in Ms individual name, without any discrimination between the trust and private funds, and the question was whether the various persons interested in the trust funds could claim the respective amounts due them, or whether the defendants were entitled to receive and administer upon the money as a part of the estate of Green. The Master of the Bolls held that the eestuis que trust could not hold the money because it had no “ earmark,” and could not be traced and distinguished within the principle before adverted to. This decision was reversed upon appeal to the Court of Appeal in Chancery. The Lord Justice, Knight Bruce, after a clear statement illustrating the doctrine upon which the principle rests, proceeds to say: “ When a trustee pays trust money into a bank to Ms credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to Mm is one which, as long as it remains due, belongs ■ specifically to the trust as much and as effectually as the money so paid would have done had it specifically been placed by the trustee in a particular repository and so remained; that is to say, if the specific debt shall be claimed on behalf of the eestuis que trust it must be deemed specifically theirs. * * * This-state of things would not, I apprehend, be varied by the circumstance of the bank holding also for the trustee, or owing also to him, money in every sense his own.” The Lord Justice, Turner, also delivered an elaborate opinion sustaining the same doctrine, in the course of which he says : “ Suppose a trustee pays into a bank moneys belonging to his trust to an account not marked or distinguished as a trust account, and pays in no other moneys, could it for one moment be denied that the moneys standing to the account of the debt due from the bankers, arising from the moneys so paid in, would belong to the trust and not to the private estate of the trustee? Then suppose the trustee subsequently pays in moneys of his own, not belonging to the trust, to the samé account. Would the character of the moneys which he had *9 before paid in, of the debt which had before accrued, be altered ? Again, suppose the trustee, instead of subsequently paying moneys into the bank, draws out a part of the trust moneys which he has before paid in, would the remainder of those moneys and of the debt contracted in respect of them lose their trust character? Then can the circumstance of the account consisting of a continued series of moneys paid in and drawn out alter the principle? It may indeed increase the difficulty of ascertaining what belongs to the trust, but I can see no possible ground on which it can affect the principle ”
In the case of The Overseers of the Poor v. The Bank of Va. (2 Grattan, 544), an attorney deposited a check for the amount of a judgment in favor of his clients to his own credit, having a small amount of other money to his credit, and died. On the day of his death a note fell due belonging to the bank which it claimed to set off, but the court held that the clients were entitled to the money. Stanard, J., says: “ The credits to Langhorne with the bank are several and the sources of each distinctly identified. * * * They are as distinct and distinguishable as they would be were they in separate parcels in the hands of Langhorne, with labels on each designating the sources from whence they were derived.” The same principle was decided in 6 Jones Eq., 34. So also in Frith v. Cartland (2 Hem. & Mil., 417), where a person received from the plaintiff certain acceptances to take up paper owing to the plaintiff, and got them cashed and ran away. After mingling the money with his own, and making various changes an(L transformations he was arrested, and the plaintiff was decided to be entitled to the money in preference to creditors; V. 0. Wood saying that “ the court attributes the ownership of the trust property to the cestui que t/rust so long as it can be traced.”
The same principle was decided in Veil v. Mitchell (4 Wash. C. C., 105), in respect to the avails of certain foreign bills collected by an agent.
In Merrill v. The Bank of Norfolk (19 Pick., 32), involv *10 ing the same principle, Morton, J., said: “ The defendants having the plaintiff’s money in their hands, for which a demand was made before the action was commenced, are liable for the amount with interest from the time when it was demanded.” These rules and adjudications, which are decisive of this case, accord with the equities. The bank defendant has no lien upon this money, and do not claim to have, and no claim is set up in the answer. Nor does it appear that any one else has. If Van Alen & Rice had given a lien for value upon this money, or had obtained a loan upon the apparent ownership of it in any way, the rights of the party holding the claim may have been superior to those of the plaintiff. No such claim is set up or shown. The note falling due the 20th of February was not set up in the answer, and if it had been would not have operated as a defence. This deposit was demanded the 6th of February and could have been assigned by Van Alen & Rice, and the holder, if for value, could' have enforced it. The note due the 20th was not an off-set, and could not be as against any but Van Alen & Rice. The question is, therefore, entirely between the plaintiff and Van Alen & Rice; the former claims the money and the latter admits the claim, and the facts sustain the justice of it. The defendant occupies the position of objecting to the title of the plaintiff without having or claiming any title itself. If Van Alen & Rice had refused to give a check the plaintiff might have been obliged to resort to an equitable action, but if a title is established by the plaintiff, and he presented the evidence upon which the defendant agreed to pay the money, I see no reason why an action at law may not be maintained, but it is unnecessary to pass upon this point as it was not made. Neither was the point made that a part of the deposit could not be recovered.
It was suggested on the argument that notice to the bank by the depositor was necessary to protect the rights of the plaintiff, but this is not so. The title of the plaintiff does not depend upon whether the bank knew he had a title or not. That rested upon other facts. A notice to the bank *11 might have prevented any transfer or the creation of a lien by the depositor, or prevented the bank' from taking or acquiring such lien in good faith, but could not otherwise be necessary or important.
The appellant also claims that the plaintiff’s money was in fact drawn out by the check for $15,000 on the 4th of February.
The authorities before cited adopt the rule that moneys first deposited apply upon checks first drawn, and the accounts in the case of Pennell v. Deffell were adjusted upon that principle.
Without undertaking to determine when this rule should, and when it should not be adopted, it is sufficient to say that the $15,000 credit and debit was a special transaction. The check of a third person was put in to pay an accommodation note of Van Alen & Eice and used for that purpose,so that the general rule would not apply to that item. With that exception no money was drawn after the deposit of $1,711, which included the proceeds of the bonds. The decision in Etna Nat. Bank v. Fourth Nat. Bank (46 N. Y., 82) has no bearing on this case. There was no question of title in the plaintiff in that case, and this court held that the obligation of the bank defendant to the depositor was discharged by the payment of another nóte against the depositor before the plaintiff’s note became due, and that the plaintiff had no right of action.
The judgment must be affirmed.
All concur except Allen and Gtbovbe, JJ., dissenting.
Judgment affirmed.