PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. WOODBURY et al.

(Supreme Court, Special Term, Albany County.  May, 1910.)

1. STATUTES (§§ 181, 190*)—CONSTRUCTION—LEGISLATIVE INTENT.

The court in construing a statute will seek the legislative intent in the language employed, and, where the language is free from ambiguity, the language will be given its plain meaning.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 269; Dec. Dig. §§ 181, 190.*]

2. TAXATION (§ 144*)—"FRANCHISE"—"SURFACE RAILROAD"—"LAND"—"REAL ESTATE"—"REAL PROPERTY."

The tax law (Laws 1881, c. 293), defining the terms, "land," "real estate," and "real property" as including "all surface, underground or elevated railroads," and the value of all franchises to construct or operate railroads in, under, above or through streets, is not limited to street surface railroads only, but includes long distance surface steam railroads, and hence a franchise granted by the state to a steam surface railroad for its road in, under, above, or through streets is property, and a special franchise, and taxable.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 144.*

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2942; vol. 8, p. 7666; vol. 5, pp. 3975–3984; vol. 8, pp. 7700. 7701; vol. 7, pp. 5899–5908; vol. 8, pp. 7777, 7778; vol. 7, pp. 5939–5951; vol. 8, pp. 7778, 7779.]

3. TAXATION (§ 204*)—EXEMPTIONS—STATUTES—CONSTRUCTION.

A statute assuming to exempt property from taxation must be strictly construed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 322; Dec. Dig. § 204.*]

4. CONSTITUTIONAL LAW (§ 229*)—DENIAL OF EQUAL PROTECTION OF LAW.

Laws 1907, c. 720, exempting railroad crossings outside of a city or incorporated village, and authorizing assessments on crossings in cities and villages, treats alike all corporations similarly situated, so that the act is not invalid as a denial of the equal protection of the law under the federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 685; Dec. Dig. § 229.*]

5. TAXATION (§ 37*)—FRANCHISES—STATUTES—VALIDITY.

A tax law authorizing the assessment, by the State Board of Tax Commissioners, of special franchises, including the value of franchises for railroads in, under, above, or through streets, and providing that the special franchises shall be deemed to include the value of the tangible property in the streets, and that the tangible property shall be taxed as part of the special franchise, does not impair the right of home rule under the state Constitution as denying to the local assessors the right to assess the land in the street, because the tangible property referred to in the statute is the fixtures, rails, ties, and other structures in the streets apart from the land itself.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 37.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. CONSTITUTIONAL LAW (§ 48*)—STATUTES—VALIDITY—PRESUMPTIONS.
The Special Term will not declare a law unconstitutional unless it clearly appears to be so.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

7. TAXATION (§ 376*)—RAILROADS—SPECIAL FRANCHISES—VALUATION.
The special franchises of a railroad company to construct and operate its roads in, under, above, or through streets must be viewed for purpose of taxation under the tax law, as parts of the whole system of the company, or in its relation to the balance of its lines in arriving at a valuation, and the mere fact that no revenues can be directly traceable to the occupancy by the company of streets, and that the burden on the company for gates, flagmen, etc., caused thereby, is so great as to destroy the value of the intangible rights, does not show that the special franchises have no net value for taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 625; Dec. Dig. § 376.*]

8. TAXATION (§ 145*)—SPECIAL FRANCHISES.
A contract between a city and a railroad company, which eliminates crossings at grade by carrying the tracks over the streets by a viaduct, or by a subway under the street, or by discontinuing the public use of the streets and diverting it to other routes, does not show an abandonment of the special franchises to construct and operate tracks on the streets, so that such special franchises are still subject to taxation.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 145.*]

9. TAXATION (§ 496*)—SPECIAL FRANCHISES—OMISSIONS—CORRECTION.
The court, on certiorari by a railroad company to review a special franchise assessment by the State Board of Tax Commissioners, may not correct an error in an assessment resulting from an omission in assessing a special franchise to cross a street, where the crossing is by a viaduct.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

10. TAXATION (§ 376*)—SPECIAL FRANCHISES—ASSESSMENTS—VALIDITY.
The validity of an assessment of special franchises of railroad companies to construct and operate tracks over streets based on crossings or on the occupancy by subways is not affected by an omission to assess crossings by the means of viaducts.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 376.*]

11. TAXATION (§ 145*)—SPECIAL "FRANCHISE."
Railroad Law (Laws 1890, c. 565) § 4, subd. 4, granting railroads the right to construct their roads across highways, is a grant to cross streets subsequently opened, and such a grant is a franchise within the tax law, imposing a tax on special franchises to construct and operate railroads across and on streets.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 252, 253; Dec. Dig. § 145.*

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2942; vol. 8, p. 7666.]

12. TAXATION (§ 496*)—ASSESSMENT OF SPECIAL FRANCHISES—CERTIORARI—BURDEN OF PROOF.
A relator, on certiorari to review an assessment of a special franchise made by the State Board of Tax Commissioners, has the burden of showing that the assessment is erroneous or unlawful, and must show that a wrong rule, theory, or method was followed in making the assessment, or that it is erroneous or unequal.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. TAXATION (§ 40*)—SPECIAL FRANCHISES—ASSESSMENT—VALUATION.
    Where real estate in a city is assessed at only 76 per cent. of its value, the special franchises in the city must be assessed at 76 per cent. of their value.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company, the Lehigh Valley Railroad Company, the Buffalo & Susquehanna Railroad Company, the Erie Railroad Company, the Buffalo Creek Railroad Company, the Grand Trunk Railroad Company, the International Bridge Company, and the Western New York & Pennsylvania Railroad Company, against Egbert E. Woodbury and others, constituting the State Board of Tax Commissioners, and the City of Buffalo, to review assessments on the relators for special franchises. Motion to confirm report of Referee denied, and the several assessments reduced and confirmed.

For affirmance, see 145 App. Div. 900, 129 N. Y. Supp. 1141.

Edward R. O'Malley, Atty. Gen., and Edward H. Letchworth, Deputy Atty. Gen., for State Board of Tax Com'rs.

Philip A. Laing, for State Board of Tax Com'rs in cases of New York Cent. & H. R. R. Co. and Erie R. Co.

Adelbert F. Jenks, for State Board of Tax Com'rs in case of Western New York & Pa. R. Co.

Kenefick, Cooke & Mitchell (Lyman M. Bass, of counsel), for Lehigh Valley R. Co. and Buffalo & Susquehanna R. Co.

Hoyt & Spratt (Lester F. Stearns and Alfred L. Becker, of counsel), for New York Cent. & H. R. R. Co.

Moot, Sprague, Brownell & Marcy, for Erie R. Co.

Clark H. Hammond (Philip A. Laing, of counsel), for City of Buffalo.

S. F. Carr, for Grand Trunk R. Co., International Bridge Co., and Buffalo Creek R. Co.

H. G. Adams, for Western New York & Pa. R. Co.

CHESTER, J. These cases, argued together, are proceedings under writs of certiorari to review the action of the defendants the State Board of Tax Commissioners in assessing the several relators for special franchises. The cases were referred to a referee to take evidence and report the same, together with his findings of fact and conclusion of law. Upon the coming in of his reports, motions were made and heard before the late Mr. Justice Fitts for their confirmation; but the motions remained undecided at the time of his death. They were then transferred to me by stipulations for re-argument and determination. It was conceded on the argument that, under the provisions of the tax law, the proceeding before the court in each case was a trial, and that its own determination of the issues involved must be made.

I have given the cases the careful consideration which their importance demands. But the great delay in getting the briefs of counsel

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to me and the requests to find leaves me no time from my court assignments to formulate my views at any great length without postponing a decision for some time.

I must content myself, therefore, with stating my conclusions as briefly as I may, with respect to the more important general questions involved, and leave my views concerning the less important matters to be expressed by my formal decisions and by my rulings upon the upwards of a thousand requests to find which have been presented.

The learned referee in a very extended opinion discussed the question of the jurisdiction of the State Tax Commissioners to make the assessments complained of, and reached the conclusion that they had no such jurisdiction, and reported that the assessments should be annulled. This question is fundamental, and is therefore the most important one presented for determination. The referee's conclusion is based upon the assertion and argument that the term, "all surface, underground or elevated railroads," inserted in the statute by the amendment of 1881 (chapter 293), and since retained by various amendments and revisions, was not intended by the Legislature to include long distance terminal railroads operated by steam power, and that the words "surface railroads" were intended to apply to street surface railroads only. The argument in support of this conclusion is a very ingenious one, and on its historic side a very interesting one, but is far from convincing from a legal point of view.

[1] There is no ambiguity in the statute, and therefore no need for construing its meaning. Ordinarily the Legislature may be assumed to mean what it says when plain and unambiguous words are employed.

In Mayor, etc., of N. Y. v. M. R. Co., 143 N. Y. 1, at page 20, 37 N. E. 494, at page 499, Judge Peckham in writing the opinion of the court said:

"It is a waste of time to cite the general canons of construction which obtain in the discharge of the judicial duty to construe an act of the Legislature. They are familiar to us all, and they result in the question: What is the real meaning of the enacting body? That meaning is to be first sought in the language used, and if that be plain, unambiguous, and imperative, there is nothing left for the courts other than to obey the directions of the statute as manifested by its language."

In McCluskey v. Cromwell, 11 N. Y. 593, at page 601, Judge Allen says:

"But in the construction, both of statutes and contracts, the intent of the framers and parties is to be sought first of all in the words and language employed, and if the words are free from ambiguity and doubt and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation."

In Newell v. People, 7 N. Y. 9, at page 97, it is said:

"Whether we are considering an agreement between parties, a statute, or a Constitution with a view to its interpretation, the thing we are to seek

is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing; then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor Legislatures have the right to add or to take away from that meaning."

[2] When the Legislature, in defining the terms "land," real estate," and "real property," enacted that these terms should be construed to include, among other things, "all surface, underground or elevated railroads," as it did in the amendment of 1881, language was employed having no doubtful signification and which is broad enough to include *all* railroads of every description. If the Legislature intended the term "all surface railroads" to include only "street" surface railroads, it would have been appropriate for it, as expressive of such intent, to have inserted that word in the statute, and thus to limit the meaning of the term; but it is not the function of the court to amend the statute by construction, to include the word, even though the court should disagree with the. Legislature as to the propriety of omitting it from the statute or as to the policy of taxing steam surface railroads upon their special franchises in and across streets.

The construction sought by the relators also necessarily involves the determination, if it is adopted, that the term *"all   *   *   *   railroads"* was intended by the Legislature to mean only a *part* of them. This is so manifestly out of harmony with all canons of construction as not to be seriously thought of for a moment.

It is a well-known fact that there are a number of lengthwise occupations of streets by steam railroads in various parts of the state, some of them several miles in length, and several miles of such occupations are by some of these relators in the city of Buffalo. Some of these occupations existed when the special franchise tax law was passed and when it was made to apply to "all   *   *   *   railroads."

Certain amendments to the tax law (chapter 908, Laws 1896) have some significance in supporting the view I have expressed. Chapter 712, Laws of 1899, known as the "special franchise tax act," defined "special franchises" and made them taxable as land or real property. This act added to the words "all surface, underground or elevated railroads," theretofore in the statute, the following:

"Including the value of all franchises, rights, or permission to construct, maintain, or operate the same in, under, above, on, or through streets, highways or public places."

Under this it was held at Special Term in August, 1900, that the amendment included the crossing of a highway or street by a steam railroad. N. Y. L. & W. R. Co. v. Roll, 32 Misc. Rep. 321, 66 N. Y. Supp. 748. The Legislature at its next session, by chapter 490, Laws of 1901, amended subdivision 4 of section 2 of the tax law by providing that the term "special franchise" shall not be deemed to include certain street crossings. Prior to that amendment the State

Board of Tax Commissioners had assessed, as appears by their Annual Reports, several thousand steam railroad crossings in the. state, and had recommended that the Legislature eliminate the less important crossings from the operation of the law because the expense of making the assessments in rural communities was so great as not to be compensated by the resulting tax. A further amendment was made by chapter 720, Laws of 1907, whereby said subdivision 4 of section 2 was amended to read as follows:

"The term special franchise shall not be deemed to include the crossing of a street highway, or public place outside the limits of a city or incorporated village, where such crossing is less than two hundred and fifty feet long."

So far as the subject under discussion is concerned, these amendments are only of negative significance. At the time they were enacted, the State Tax Commissioners were assessing both steam surface railroads and street surface railroads under the law relating to crossings, and many roads of both classes were acquiescing in these assessments and paying without question the taxes based thereon. Yet both amendments were enacted without including a word showing any purpose or intention of excluding steam railroads from the operation of the act. If the State Tax Commissioners had during all these years falsely construed the act and had not correctly obeyed the legislative intent as expressed in the law, it is altogether probable that something would have been inserted in the amendments to require them to change their policy in this respect.

[3] Under section 3 of the tax law *"all"* real property within this state * * * is taxable unless exempt from taxation by law." A franchise granted by the state to a *steam* surface railroad corporation to construct, maintain, and operate its road, "in, under, above, upon or through any streets, highways or public places," is identical· in kind with the franchise of a *street* surface railroad to do the same thing. Both are property rights and special franchises of equal value under the same circumstances. The conclusion of the learned referee, if sound, results in entirely exempting the special franchises of steam surface railroad companies from taxation. In reaching this conclusion it would appear that the rule of strict construction of statutes assuming to exempt property from taxation has been overlooked. Buffalo, etc., v. Buffalo, 46 N. Y. 506; People v. Com'rs of Taxes, 95 N. Y. 554; People v. Com'rs of Taxes, 82 N. Y. 464.

I think for these reasons that the defendants the State Tax Commissioners clearly had jurisdiction, under the law, to make the assessments in question.

[4] It is urged that the act of 1907 (chapter 720), which exempts crossings outside of a city or incorporated village and authorizes assessments upon crossings in cities and villages, is unconstitutional under the federal Constitution as a denial of the equal protection of the law. But there is no such denial. All corporations similarly situated are treated alike. There is no discrimination under the law in favor of one or against another. Every railroad company is assessed in the same way upon the same class of property, and the burden falls upon each alike. That is all that is essential to render the act free

from successful attack under the constitutional prohibition referred to. Wurts v. Hoagland, 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; Walston v. Nevin, 128 U. S. 578, at page 582, 9 Sup. Ct. 192, 32 L. Ed. 544; Magoun v. Ill. Inst. & Savings Bank, 170 U. S. 283, at page 293, 18 Sup. Ct. 594, 42 L. Ed. 1037.

[5] The claim is also made that the act authorizing the assessment of special franchises by a state board, instead of by local assessors, is an impairment of the right of home rule under the state Constitution. I had supposed, until the question was presented in these cases, that that question had been set at rest by the determination of the Court of Appeals, in People ex rel. Metropolitan Street Ry. Co. v. State Board, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674. But it is said that that decision related to a street surface, and not to a steam, railroad, and a distinction is sought to be made because these relators are the owners of the fee of the land in many of the streets in question where the railroads cross, and in that case the relator did not own the fee in the streets. The claim is that the local assessors are denied the right by the special franchise tax act of assessing the *land* in the street, where the fee is in the relators, while before the act such land had always been assessed by them. If it ever was so assessed, it was simply as a part of or appurtenant to the abutting land outside the street, for the land in the street which was subjected to a public use was exempt from taxation. The Court of Appeals, in the Metropolitan Case, held that a special franchise was the *right* granted by the state or some municipality to a corporation to construct, maintain, or operate in a public highway some structure intended for public use, which, except for the grant, would be a trespass, and that in making this intangible franchise subject to taxation the Legislature had created a new system of taxation and brought within its range a new character of property.

The State Board of Tax Commissioners, however, have no power to assess anything but special franchises; that is the "new character of property" just mentioned. They have no power under the law to assess any "land," "real estate," or "real property," as those terms were used before the law was amended to provide that they should be construed to include "all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same, in, under, above, on or through, streets, highways, or public places; all railroad structures, substructures and superstructures, tracks and the iron thereon, branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground." The law provides that the special franchise shall be deemed to include the value of the tangible property in the streets, and that the tangible property shall be taxed as part of the special franchise. Subdivision 3 of section 2, Tax Law (Consol. Laws 1909, c. 60). Under the construction put upon the law in the Metropolitan Case, it appears clear that the tangible property referred to in the

statute is the fixtures, rails, ties, and other structures in the streets apart from the "land" itself as that word is generally understood.

[6] I am convinced, therefore, that no constitutional right of the relators has been infringed by giving this power to assess special franchises to the state board. Even if I had doubts concerning the validity of the law, it would be improper for me to declare its invalidity, under the well-settled rule that the Special Term should not declare a law unconstitutional unless it clearly appears to be so.

[7] The claim is also made that none of the occupancies of streets, highways, and public places by the relators has any taxable value whatever in excess of the tangible property therein. This is based upon the idea that no revenues can be directly traceable to such occupancies, and that the burdens resting upon them because thereof are so great as to destroy the value of the intangible rights. These burdens come from the expense of maintaining gates and flagmen at crossings, from damage claims growing out of accidents at crossings, and from other causes. The learned referee has found that the crossings had no *net* value at the date of the assessment in excess of the value of the tangible property. But the question to be determined is not as to the net value of the crossing, but as to the value of the special franchise including the tangible property in the street. Many other species of property owned by railroad companies have no net value to them, if the value is to be measured by the cost thereof, the revenues directly traceable therefrom, or by the burdens caused thereby; nevertheless the property is assessable for taxation at the value thereof. This is so with reference to bridges, depots, freighthouses, and ofttimes of branch lines or feeders. Each of these classes of property, as well as the special franchises in streets and public places, should be viewed as parts of the whole or in its relation to the balance of the line in arriving at its value. People ex rel. Buffalo & State Line R. R. Co. v. Barker, 48 N. Y. 70.

[8] It appears that various contracts known as "grade crossing contracts" were made between commissioners on behalf of the city of Buffalo and some of the relators pursuant to various acts of the Legislature, which need not be enumerated. The essential purpose of the contracts was to eliminate crossings at grade. In some instances the railroad was carried over the street by a viaduct; in some the crossing was effected by a subway passing under the street; and in others the contracts provided that the streets should be closed, abandoned, discontinued, and obstructed, and the travel thereof and thereon diverted to other routes. The claim is made that the effect of these contracts and the changes made under them is to terminate any special franchise which theretofore existed for crossing the streets covered by the contracts at grade, and that no right, authority, or permission, within the definition of a "special franchise," to cross the streets in any other way, can be spelled out of the contracts, and therefore that no assessment for a special franchise as to any of those streets can lawfully be made. The agreements contained provisions that the parts of streets *on their present grade* which are hereafter to be carried over the railroad by viaduct structure or under the rail-

road by subway are to be abandoned and discontinued by the city of Buffalo upon the completion of such viaducts or subways, and shall not thereafter be used for street purposes *on the present surface thereof.* Under these provisions there was but the substitution of one method of crossing for another, and the substitution was made to eliminate the crossing at grade; but the old franchise or right to cross the street still remained. The old surface or grade of the streets and the right to use the streets at that grade and surface was abandoned and discontinued.

The assessment under the law was to be made upon the value of all franchises, rights, or permission to construct, maintain, or operate surface, underground, or elevated railroads in, under, above, on, or through streets, highways, or public places, all railroad structures, substructures, and superstructures, tracks, and the iron thereon; branches, switches, and other fixtures permitted or authorized to be made, laid, or placed in, upon, *above,* or *under* any public or private road, street, or ground. It matters not whether the crossing or occupation is at grade or under or over the street or public place to subject the value of the franchise to cross or be upon, over, or under the street to assessment under the law.

[9, 10] It seems that, in the notice of tentative assessments given by the state board to some of the relators, crossings and occupations by subways and by viaducts were both included; but on grievance day the assessments on viaducts were omitted. The reason for this omission is not apparent, for both are governed by the same principles. This omission cannot now be corrected, but it in no way affects the validity of the assessments upon the crossings or occupancy by subways.

It would seem at first sight that where the contracts provide that certain named streets or parts thereof should be closed, abandoned, discontinued, and obstructed, and the travel thereof and thereon diverted to other routes, the city has put itself in such relation to the streets that they can no longer be regarded as streets, highways, or public places within the meaning of the law for the purpose of assessing the relators for special franchises thereon; but, so far as these streets have been assessed by the state board, I am inclined to think that such assessments must be sustained. It is true that under the contracts the public have been excluded from parts of these streets; but there is no change in the title of them, and the municipality still has the right to maintain the sewers and pipes already laid in them and to exercise any rights therein not inconsistent with the enlarged privileges conferred upon the respective relators under the contracts. Their franchises in these streets or public places, instead of being wiped out by the contracts, have been made of much greater value by reason of the exclusion of the traveling public therefrom.

[11] I cannot yield my assent to the contention that, as to streets which have been opened up and extended across the right of way of any of the relators since the construction of their respective roads, they are not assessable for special franchises at such crossings. Since the early days when the great trunk lines were constructed, the cities

and villages through which they pass or which they reach have had a remarkable growth, and many new streets have been opened which these lines cross and which they crossed at the time of the passage of the special franchise tax law. The Legislature, having that situation before it, enacted the law and employed language in it making assessable the value of "all franchises" "in, upon, above or under *any* public or private road, street or ground." Under the law the tangible property of the relators in the streets is not subject to assessment by the local assessors, and will entirely escape taxation if this contention should be upheld.

It has been held, with respect to a corporation engaged in supplying gas for public and private use to which the right to use streets has been once granted in general terms, that such grant necessarily contemplates that new streets may be opened and old ones extended, and that the privilege may be exercised in the new streets as well as the old. People ex rel. Woodhaven Gas Co. v. Deehan, 153 N. Y. 533, 47 N. E. 787.

Under the principle enunciated in the case last cited, the provision of subdivision 4 of section 4 of the railroad law (chapter 565, Laws 1890), granting to railroad corporations the right to construct their roads across, along, or upon highways, may fairly be construed as a grant to cross streets thereafter opened, and such a grant is a franchise which is in the purview of the act in question.

[12] With respect to the question of the value of the special franchises, it must be borne in mind that the burden rests upon the relators to show that the assessments made upon them are erroneous or unlawful. People ex rel. Jamaica Water Supply Co. v. State Board, 196 N. Y. 53, 89 N. E. 581. The presumption is that the assessments are legal and proper. If it was shown that a wrong rule, theory, or method had been followed in making the assessments, or that they were erroneous or unequal, they could not stand; but none of these things has been made to appear. While it appears that the values placed upon some of the special franchises, over and above the stipulated amount of the value of the tangible property which has been included in them, is large, I am unable to gather from the evidence sufficient to rebut the existing legal presumption or to justify their reduction, except for the purpose of equalization as hereinafter stated.

[13] I think there should be a reduction in all the assessments in Buffalo of 24 per centum of the amount thereof, to equalize them with the assessments of the other real property on the local rolls. It appears by the equalization tables made by the State Board of Equalization that other real estate in the tax district—that is, in the city of Buffalo—is assessed at only 76 per centum of its full value. The defendants urge that the local assessors are required by law to assess all real estate at its full value, and that they have appended to their rolls their affidavits, as required by law, that they have done so in this instance. But it is well known that in many localities, if not in most, these affidavits are made by the assessors as a matter of form, because required by law, rather than as a matter of conscience

and when the State Board of Equalization, after investigation, has in the discharge of its duty made its tables showing that real estate in Buffalo has, notwithstanding the formal oaths of the assessors to the contrary, been assessed at only 76 per centum of its value, such tables should not be ignored in a matter of this kind, and the deduction stated should be made for the purpose of equalization. This method of equalization was sanctioned in the Jamaica Water Company Case, supra, and should be followed here.

The motion to confirm the report of the referee is denied, the several assessments made by the State Board of Tax Commissioners in each of these cases, and inserted in the assessment rolls in Buffalo, should be reduced by deducting therefrom 24 per centum of the amount thereof, and, as so reduced, should be confirmed, with costs to the defendants in each case against the relator.