THE PEOPLE ex rel. AMERICAN MANUFACTURING COMPANY and CUNNINGHAM REALTY COMPANY, Relators, *v.* COMMISSIONERS OF TAXES AND ASSESSMENTS, etc., Taxes 1906 to 1912 Inclusive, Respondents.*

(Supreme Court, Kings Special Term for Trials, June, 1914.)

*Taxes — review of assessments for inequality — Tax Law, § 290 — Greater New York Charter, § 906 — excessive valuation — former determination may be considered though not res . adjudicata.*

PROCEEDINGS to review assessments for taxation upon the real property of relators for the years 1906 to 1912, inclusive, upon property situated in borough of Brooklyn.

Magner & Carew (Thomas F. Magner, of counsel), for relators.

Frank L. Polk, corporation counsel, for respondents.

KELLY, J. I have gone over the testimony in this proceeding with the aid of the able briefs submitted by the respective counsel and I reach the following conclusions:

---

* Affirmed by Appellate Division, Second Department, May 3, 1918.—[REPR.

(1) As to the claim of the relator that the assessments are unequal and that it has been treated unjustly as compared with other property owners upon the same roll, I hold that the relator cannot raise that issue in this proceeding for want of statement of specific instances of inequality in its application to the commissioners as well as in the petition. The objections of the respondents to this line of testimony are sustained. Tax Law, § 290; Greater N. Y. Charter, § 906; *People ex rel. Coney Island Jockey Club* v. *Purdy,* 152 App. Div. 175; affd., 207 N. Y. 695; *People ex rel. Mandel* v. *Purdy,* Special Term, N. Y. County, Jan., 1914, Cardozo, J.

(2) As to the relator's claim of excessive valuations of lands and improvements:

The assessments in dispute in this proceeding are for the years 1906 to 1912, inclusive. The propriety of the assessment of the greater part of this identical property for the years 1899 to 1905 was the subject of long investigation before this court in 1905 to 1907. The matter was sent to a referee, now one of the justices of this court, who, after hearing the parties and their witnesses, made a report fixing the just valuation of the property involved in that proceeding, viz., blocks 2564 and 2567, and giving his reasons for his findings. This report was afterwards confirmed by the Special Term, and the final order was successively affirmed by the Appellate Division and the Court of Appeals. *People ex rel. American Manufacturing Co.* v. *O'Donnel,* 129 App. Div. 924; affd., 196 N. Y. 567. Now it is true, as asserted by the learned corporation counsel, that the decision in the case cited is not *res adjudicata* on the respondent commissioners in succeeding years (*People ex rel. Eckerson* v. *Zundel,* 157 N. Y. 513), and I do not consider the former determination in that light. But I take it in connection with the conceded fact that property valuations in this Green-

point waterfront section, between Bushwick and New-town creeks, have not varied since 1905 — certainly not increased. This is the evidence of the experts on both sides regarding property in general in this locality. It may be that, in certain isolated cases where some particular individual must have some particular piece of property, advanced prices may be obtained, although there is no specific instance in the imme-diate locality under examination here. But such instances furnish no standard of valuation. For some reason, this stretch of shore front on the Brooklyn side of the East river does not appear to advance in value, and as the learned corporation counsel says regarding the valuation of the premises under exami-nation from 1906 to 1912, "substantially, the value of the buildings and structures were the same in each of the years stated," and it is apparent that the same situation prevailed in 1905 as in 1906. If anything, the buildings deteriorated as the years went on. There-fore I approach the consideration of the evidence of the witnesses called on both sides, with this finding of fact on the former trial before me not *res adjudicata,* but a deliberate determination of a referee who examined the matter carefully, confirmed by the courts.

I have read the strictures of the corporation counsel upon the expert witnesses called by the relator as to the land and building values, and similarly the counsel for the relator has no very high opinion of the judg-ment of the experts called in behalf of the respondents. It is unnecessary to add to the legal literature regard-ing expert witnesses. Under our present procedure they appear to be necessary to the determination of questions like those presented here. And I also have due respect for the original determination of the respondents acting as assessors and performing their public duties. I do not agree, however, that Mr.

Porter is uninformed about the subject, or that Messrs. Ashfield and O'Brien are not entitled to credit. · They are well-known men, residents of this borough, and men whose judgment in such matters is recognized in the community as entitled to weight and consideration. As against the gentlemen called for the respondent, I think their testimony, coupled with the conclusions of the court upon the former trial, together with all the other evidence, shows that the preponderance of the evidence favors the relators' estimates of value.

· I therefore reach the conclusion that the assessment of the relators' real estate and property for the years 1906 to 1912, here complained of, is excessive. These assessments are out of all proportion to the valuations fixed by the court in the former litigation, and no attention appears to have been paid to the very substantial reductions then granted upon the complaint of the relator. These reductions in valuation, it will be remembered, were made after a long hearing and were affirmed by the Appellate Division and the Court of Appeals. The taxing authorities appear to have paid no attention to the findings of the courts, and I find no explanation. to their disregard for these findings.

On the evidence now submitted I find the following to be the full and true value of the relators' property for the purposes of assessment and taxation:

Block 2564, for 1906, 1907, 1908, in each year:

| | |
|---|---|
| Land | $130,000 |
| Improvements | 138,000 |
| Total | $268,000 |

For 1909, 1910, 1911 and 1912, owing to additional construction, in each year:

| Land | $130,000 |
| Improvements | 207,000 |
| **Total** | **$337,000** |

Block 2567, for 1906, 1907, 1908, in each year:

| Land | $132,000 |
| Improvements | 196,000 |
| **Total** | **$328,000** |

For 1909, 1910, 1911 and 1912, owing to additional construction, in each year:

| Land | $132,000 |
| Improvements | 241,000 |
| **Total** | **$373,000** |

Block 2565, west one-half, for 1911 and 1912, in each year:

| Land | $26,640 |
| Improvements | 37,775 |
| **Total** | **$64,415** |

Block 2568, for 1911 and 1912, in each year:

| Land only | $58,014 |

(3) As to the machinery contained in the buildings: The facts are substantially the same as upon the trial before Judge Stapleton, sitting as referee in 1905, 1906. They are covered by a stipulation as to the location and character of the machinery. On the former trial it was expressly found that this machinery was personalty and Judge Stapleton referred to the evidence, which is practically stipulated here, as over-

whelming, if not undisputed, in favor of his conclusions. Again I do not take this former decision as *res adjudicata,* but on the facts as stipulated I do not see how it can be asserted that the relators' machinery is real estate. I find that it is personal property.

I therefore direct findings in accordance with the views herein expressed, which, with a final order, may be settled upon notice, unless the parties can agree upon form, and the corporation counsel may submit such requests to find as he may deem necessary to preserve the rights of his client, in case it should be desired to review this decision. Such requests, if there are any, to be also presented upon notice.

Ordered accordingly.