THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTERNATIONAL SALT CO., INC., Appellant and Respondent, v. MARK GRAVES et al., Constituting the State Tax Commission, Respondents and Appellants.

(Submitted February 25, 1935; decided April 16, 1935.)

150

*Henry B. Twombly* for relator, appellant and respondent.

*John J. Bennett, Jr., Attorney-General* (*Wendell P. Brown* of counsel) for defendants, respondents and appellants.

CROUCH, J.   From 1917 to 1928, inclusive, the relator, a domestic corporation, filed its annual franchise tax report under article 9-A of the Tax Law (Cons. Laws, ch. 60).   Upon the data so supplied, assessments were made and the taxes paid.   During all of those years section 218 of the Tax Law gave the relator an adequate remedy as against taxes unlawfully demanded, or payments illegally made or exacted, by providing for a revision proceeding within one year from the time of auditing and stating an account.   No application for the revision of any of those assessments was ever made under that section.

On August 12, 1932, the relator filed with the State Tax Commission a sworn return showing corrections made by the United States Commissioner of Internal Revenue in the reported net income for each of the business years

upon which franchise tax assessments had been made for the tax years from November 1, 1917, to November 1, 1928, inclusive. The net corrections for all of the years was a substantial increase. That return was made pursuant to section 219-d of the Tax Law, which provided, in substance, that upon its filing, the Tax Commission should ascertain relator's net income for each of the fiscal or calendar years for which a correction had been made; and should thereupon " reaudit and restate the account of such corporation for taxes based upon the entire net income as changed or corrected for such fiscal or calendar year but without change of the segregation of assets upon which the original assessment was based, such reaudit to be according to the entire net income so ascertained by the tax commission."

In its return, however, the relator did not confine itself to the item of corrections in the reported net income, but in addition requested that the segregation of assets for the tax years beginning November 1, 1918, and November 1, 1919, be opened for the purpose of removing the limitation held unconstitutional in *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (230 N. Y. 48); and further requested that the segregation for all the years be opened for the purpose of changing the valuation of the stocks of other corporations which had been reported at cost rather than at actual value.

Upon that return the Tax Commission made the corrected and added assessments required by the correction in net income made by the Federal government. It declined, in accordance with the command of the statute, to make any change in the segregation of assets. The result of the changes in net income was net additional taxes of $11,305.29. Thereupon the relator applied for revision of said corrected and added assessments. A hearing was had and the final determination affirmed the corrected and added assessments without change. Upon certiorari to review the final determination, the Appel-

late Division held as to all the years except 1918 and 1919 that the failure of relator to seek revision of the segregation within the time limited by section 218, was a bar to the revision now demanded. As to the years 1918 and 1919, however, it held that the relator's failure to seek revision within the statutory period did not constitute a bar because the original segregation in each of those years, made in accordance with an unconstitutional statute, was no segregation, and so left open the entire matter of assessment to be gone into *de novo* in this proceeding arising out of the corrections of net income under section 219-d.

As to the years other than 1918 and 1919, we all agree that the determination below was right. It is true that the express prohibition in section 219-d against change of the segregation of assets did not come into the statute until 1922 (Laws of 1922, ch. 507). But the matter is one of procedure and administration. Therefore, whatever may be drawn from other general language in the statutes, or from expressions with respect thereto in the *Alpha Portland Cement* case, the amendment of 1922, in force at the time the determination herein was made, is controlling. An adequate remedy always existed.

The ruling as to the years 1918 and 1919 is more doubtful. No controlling authority has come to our attention. But for the provision of section 219-d, an assessment once made would have had complete finality, subject only to the right of revision granted by section 218. With the expiration of the time limited by that section for beginning the revision proceeding, no defect either of law or fact could have afforded ground for attack. The determination by the Commission of the several factors entering into the statutory formula would have been final. Neither error nor invalidity, whether constitutional or otherwise, entering into such determination would have changed the rule of finality. (*Matter of Hoople,* 179 N. Y. 308; *Second Nat. Bank* v. *City of New*

*York,* 213 N. Y. 457; *Liberty Bank* v. *City of Buffalo,* 241 App. Div. 323; affd., 265 N. Y. 543; *Gorham Mfg. Co.* v. *State Tax Comm.,* 266 U. S. 265; *Fourth Atlantic Nat. Bank* v. *City of Boston,* 300 Fed. Rep. 29; *Wheatland* v. *City of Boston,* 202 Mass. 258.)

But section 219-d, at least to the extent and for the purpose therein expressly stated, did modify the rule of finality. We think it modified it no further. The argument to the contrary rests and can only rest upon the direction to " reaudit and restate the account," after having ascertained " from such return and any other information in the possession of the commission, the entire net income of such corporation for the fiscal or calendar year for which such change or correction has been made by such commissioner of internal revenue."

The argument, briefly, is that such reaudit and restatement necessarily involves a new segregation of assets since that which was originally made was wholly void because of the constitutional defect; and that being so, the Commission is bound to segregate in accordance with amended section 214 upon the basis of new data furnished by the relator.

That argument gives a meaning to the words " reaudit and restate " in section 219-d which certainly they have not had since the amendment of 1922, and which it is reasonably clear they were not intended to have before that amendment. For practical reasons the annual net income of any corporation as reported to the United States Treasury Department was under the statute to be accepted as presumptively correct. The essential purpose of section 219-d was to carry into the State's computation any change or correction made by the Federal authorities in that item. When the section directed the Tax Commission, after making such change or correction, to reaudit and restate the account, the obvious meaning was to correct the assessment on the basis of a change in the only factor up for consideration. The amendment of 1922

served only to make explicit what was reasonably clear before.

Since the time for making corrections of net income depends wholly upon the time when the Commissioner of Internal Revenue may act, it is obvious that the limitation of time for revision as to all other factors would be of little avail, if those factors could under any circumstances be opened up for revision in connection with the reaudit under section 219-d. In view of the great public importance to the State of finality in the determination of revenue matters, we can see no substantial reason for differentiating between the finality of determinations involving error of fact and those involving error of law. When, with the expiration of the time limitation, the opportunity for revision is past and gone except for the purpose expressly covered by section 219-d, gone also for all practical purposes is the legal distinction between an erroneous determination and an invalid or void determination.

The order of the Appellate Division should be affirmed in so far as it confirmed the final determination of the State Tax Commission; and reversed in so far as it annulled said determination, and the determination of the Tax Commission should be confirmed.

The order of the Appellate Division should be modified in accordance with this opinion and as so modified affirmed, with costs.

LEHMAN, J. (dissenting in part). I dissent from so much of the decision as reverses the order of the Appellate Division annulling the determination of the Tax Commission for the years 1918 and 1919. The Tax Law (§ 219-d) provides that if the amount of the net income of any corporation is changed or corrected by the United States Treasury Department, such corporation shall make a new return of such changed or corrected net income. " The tax commission shall thereupon reaudit and restate the account of such corporation for taxes based upon the

entire net income as changed or corrected for such fiscal or calendar year but without change of the segregation of assets upon which the original assessment was based."

Here the corporation filed a new return as required by the statute and the Tax Commission has reaudited the return and restated the account of the corporation for taxes. It has refused upon such reaudit and restatement to correct alleged errors in the segregation of the assets upon which the original tax was based. The reason why it has refused such correction is that the Legislature has provided that it shall not change the segregation. The errors were in whole, or in large part, due to statements of the corporation in making its original return. These errors were reflected in the segregation of assets and resulted in the imposition originally of a larger tax than should have been imposed. An adequate remedy for the correction of errors in the original assessment was provided by other provisions of the Tax Law, and the time limited by the Legislature for the invocation of such remedy has expired. Under the authorities cited in the opinion of Judge CROUCH, the determination of the Tax Commission assessing the tax then became immune from attack because of errors made by the Commission, except in so far as the Legislature chose to provide other remedies for the correction of error.

There is, here, no dispute that the Tax Commission had jurisdiction to assess a tax in 1918 and 1919 against the relator. Errors, whether on constitutional points or otherwise, entering into its determination, which do not affect its jurisdiction, would, I agree, not affect the finality of the Commission's determination. I agree, too, that under a reasonable construction of section 219-d of the Tax Law, it is plain that the Legislature did not intend to provide an additional remedy for the correction of errors in the original determination or modify the finality of such determination, except in so far as it related to, and was necessitated by, change or correction of net income

by the United States Treasury Department. In express and unambiguous terms the Legislature decreed that the tax reassessed upon the corrected income should be based upon the segregation, without change of the segregation of assets upon which the original assessment was based.

The original tax assessments for the years 1918 and 1919 were based upon a segregation of assets in accordance with statutory rules which deprived the corporations of their constitutional rights and which transcended the limits of the legislative power of the State. (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48.) Thus the original tax assessment was based upon a segregation of assets made in accordance with rules which the State had no power to make. The tax assessment was open to attack, not for error made by the Commission in the application of statutory rules in segregating the assets of the corporation, but because the assessment was based upon a segregation which the Legislature was without power to direct. The segregation was not merely erroneous but was invalid in its inception. The question is not here presented whether a tax assessment based upon a segregation invalid in its inception is subject to collateral attack or whether the Legislature may provide a single appropriate remedy for revision of errors and thus render the assessment immune from other attack. The question here presented is whether the Legislature may direct a new assessment to be based upon segregation which is not merely erroneous but has been made in accordance with the provisions of a statute which this court has declared void and of no effect.

It has been said that " a taxpayer who does not exhaust the remedy provided before an administrative board to secure the correct assessment of a tax, cannot thereafter be heard by a judicial tribunal to assert its invalidity." (*Gorham Mfg. Co.* v. *State Tax Commission*, 266 U. S. 265, 269, 270.) That was said in a case where a taxpayer sought the aid of a court of equity to set aside a tax

assessment upon the ground that it included income which the State of New York could not tax, though the taxpayer had never applied for a revision of the tax and had " submitted no evidence to the Commission as to any of the matters on which it now relies." The other cases cited in the opinion of Judge CROUCH all dealt with proceedings brought to recover tax payments previously made and the courts there merely applied the well-established rule that a State may impose reasonable limitations upon proceedings to recover moneys paid under a void statute and wrongfully retained. (Cf. *Burrill* v. *Locomobile Co.*, 258 U. S. 34.)

All these cases are merely illustrations of the rule that though a tax assessment under a void statute may cause injury to a taxpayer, the State may provide an exclusive remedy for the injury sustained and may limit the time during which that remedy may be invoked. Here the taxpayer is not complaining against the original assessment. The time has expired during which the taxpayer could avail himself of the statutory remedy against errors there through application for a revision of the original tax account. A contingency has, however, occurred which requires the Tax Commission to reaudit and restate the taxpayer's account and to make a reassessment of the tax. The taxpayer seeks review of that assessment by certiorari in the manner and within the time permitted by law. The reassessment must be based upon the segregation without change of assets upon which the original taxes were based. To the extent that the Legislature had power to provide for a new assessment based upon an old segregation, regardless of error contained therein, the statute must be enforced according to its terms. Its power to provide that the original segregation may not be revised now, merely for the correction of errors is not open to doubt; but that presupposes not only that the Legislature provided a reasonable remedy for revision of errors but also that the original segregation was author-

ized by a valid statute. Where there has been no segregation, obviously there can be no reassessment of tax based upon a non-existent segregation. Where there has been attempted segregation in accordance with rules heretofore declared void by this court, segregation is also void. The original command of the Legislature to base a tax upon a segregation which was inequitable and unreasonable was a mere empty gesture. Such segregation, though attempted, never had life or force. Assessment of a tax based upon such segregation was at its inception void and constituted a wrong to the taxpayer aggrieved thereby. The Legislature is without power to give any force or life to the original lifeless segregation, and no case has been cited which so holds. The most that the Legislature may do is to limit the aggrieved taxpayer to the remedy provided by the Legislature for the injury suffered.

Here, under the construction now placed upon the statute, the Legislature has attempted more. It has provided that there shall be a reassessment of the tax based upon segregation made in accordance with rules it had no right to promulgate. The reassessment based upon correction of income alone might result in a much larger tax than was originally assessed, a tax which we have said was inequitable and beyond the power of the State to impose. It has no more right to order a reassessment of an illegal tax than to order the original assessment. It has provided for a tax based upon a segregation of assets. In assessing or in reassessing the tax, the Commission must assess the tax upon a segregation of assets made in accordance with a valid statute. Any other tax would be illegal.

The order of the Appellate Division should be affirmed.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with CROUCH, J.; LEHMAN, J., dissents in opinion from modification.

Ordered accordingly.