THE PEOPLE OF THE STATE OF NEW YORK ex rel. WESTERN NEW YORK & PENNSYLVANIA RAILWAY COMPANY, Respondent, Appellant, *v.* THE STATE BOARD OF TAX COMMISSIONERS and THE STATE TAX COMMISSION, Appellants, Respondents.
THE CITY OF BUFFALO, Intervenor, Appellant, Respondent.

Third Department, January 11, 1939.

*John J. Bennett, Jr., Attorney-General [Timothy F. Cohan, Assistant Attorney-General; Henry Epstein, Solicitor-General,* and *James R. Creary, Assistant Attorney-General,* with him on the brief, of counsel], for the appellants, respondents.

*David Diamond, Corporation Counsel [Herbert A. Hickman* of counsel], for the intervenor, The City of Buffalo, appellant, respondent.

*Harold J. Adams [Percy R. Smith* of counsel], for the respondent, appellant, Western New York & Pennsylvania Railway Company.

CRAPSER, J. These proceedings are before this court on appeal by both the respondents (defendants) and the relator from the final order entered upon the decision of the referee.

The twenty-one proceedings now before the court were brought to review the special franchise assessments for the years 1909–1918,

inclusive, and 1926–1936, inclusive, upon the crossings or other occupations by relator's railroad over and along streets and highways in the city of Buffalo. In these proceedings relator claims that the assessments for the crossing of Lord and Smith streets are invalid because the railroad preceded the streets; that the assessments for the crossing of Marilla and Cornelia streets and that for the lengthwise occupation of North Division street were invalid because no such streets ever existed at the points of crossing or other occupation involved; and that the assessments for " Buffalo River (upper) Railroad Bridge " was invalid because the river was not navigable and, therefore, not a highway at the point of crossing.

The State Tax Commission by further returns in each of these proceedings set up the bar of the decision in the like proceedings to review assessments on the same crossings and occupations for the year 1908 in which proceeding the assessments were sustained. The appeal in the 1908 proceeding was argued before this court September 23, 1938. A decision dismissing the appeal was handed down November 2, 1938. (*People ex rel. Western N. Y. & P. R. Co.* v. *Woodbury*, 255 App. Div. 894.)

The defendants, in support of their pleas in bar, upon the trial of these proceedings, introduced in evidence the record in the 1908 case. That record was not reprinted in this record, but it was stipulated that either party might refer to any portion of the 1908 printed record now on file in this court.

The 1908 record shows that the petition for the writ alleged that the assessments for tracks lengthwise in North Division street and for the crossings of Marilla and Cornelia streets and Buffalo river were invalid for the reason that those streets did not exist at the alleged crossings or occupations, and that the river was not a " highway " at the point of crossing.

The court at Special Term found that all the streets in question were public streets in the city of Buffalo and that the relator was the owner of a special franchise therein and in the crossing of the Buffalo river.

The referee in his opinion says: " Respondents contend that the CHESTER order states the ultimate facts, in that it adjudges that the State Board of Tax Commissioners had jurisdiction of the relator and the subject matter of the assessments and had full power to finally fix and determine the value of each and every of relator's special franchises within the City of Buffalo; and that such adjudication operates as an estoppel as to all matters affecting the legality of the assessments contested in these proceedings."

Justice CHESTER ignored the question of prior occupation. In his opinion (reported *sub nom. People ex rel. N. Y. C. & H. R.*

*R. R. Co.* v. *Woodbury,* 74 Misc. 130, 142; Id. 145) Mr. Justice CHESTER held that it was of no importance whether the railroad was a prior occupant. " I cannot yield my assent to the contention that, as to streets which have been opened up and extended across the right of way of any of the relators since the construction of their respective roads, they are not assessable for special franchises at such crossings."

The same case, on appeal (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury,* 145 App. Div. 900; 203 N. Y. 167), laid down the principle that when a public highway is laid across a track of an existing railroad it is not a crossing liable to taxation as a special franchise.

The referee has found that there was no adjudication in the CHESTER order as to the status of crossings where a railroad may have been a prior occupant.

The referee further says:

" Another question as to the effect of the CHESTER order is as to whether it may operate as an estoppel in a proceeding to review a subsequent assessment made by the State Board of Tax Commissioners after a change of membership. When the assessments for the years subsequent to 1913 were made there had been a complete change of membership of the State Board of Tax Commissioners. In that situation the law appears to be that the adjudication on the 1908 assessments does not operate as an estoppel in favor of or against the new Commissioners. (*People ex rel. Eckerson* v. *Zundel,* 157 N. Y. 513; *People ex rel. Norwich Pharmacal Co.* v. *Porter,* 132 Misc. 609; 228 App. Div. 54; *People ex rel. American Mfg. Co.* v. *Commissioners, etc.,* 104 Misc. 703; *People ex rel. Tishman & Son* v. *Cantor,* 109 id. 495; *Matter of St. Lawrence Transmission Co.* v. *McAvoy,* 137 id. 603–610.)

" I hold, as above indicated, that there was no adjudication in the proceedings to review the 1908 assessments on the matter of prior occupation by the railroad and, if there was such adjudication, it does not operate as an estoppel on the review of assessments made subsequent to 1913, and further, that the adjudication made on the 1908 assessments as to the existence of certain streets does not operate as an estoppel in these proceedings so far as they involve assessments made after 1913."

The referee found that Smith and Lord streets did not exist across the railroad right of way at the time the railroad was constructed and he ordered that the assessments for crossing Smith and Lord streets should be canceled. The referee held that Cornelia street and Bass alley were never dedicated or laid out and accepted as public streets. He further held that no assessment had been made for crossing Bass alley since 1909 but that one assessment

must be sustained because of the adjudication made on the 1908 assessment. He further held that the crossing of Cornelia street for the years 1909–1913, inclusive, must be upheld because of the 1908 decision and that for all years subsequent to 1913 the assessment was annulled because the street did not exist.

The opinion of the referee further states that Marilla street at the point in question has never been laid out as a public street and he decided that the assessments for crossing Marilla street for the years 1909–1913, inclusive, should be upheld because of the 1908 decision and for the years 1914–1936, inclusive, the assessments should be canceled.

The referee further says that North Division street in the block assessed for lengthwise occupation never existed as a street either by dedication, acceptance or usage. No attempt to assess relator for the occupation of this block has been made since 1916 and he decided that " the assessments for lengthwise occupation of North Division street for the years 1909 to 1913, inclusive, should be upheld and that the assessments for the years 1914 to 1916, inclusive, should be canceled."

The referee, by his opinion, held that the adjudication on the 1908 assessments operated as an estoppel until such time as the membership of the State Board of Tax Commissioners had changed in 1913.

A recent decision in the case of *People ex rel. Hilton* v. *Fahrenkopf* (279 N. Y. 49) held that the case of *People ex rel. Warren* v. *Carter* (119 id. 557) did not decide more than the proposition that the value of property for taxation as adjudicated in one year may be evidence of its assessable value for a succeeding year. And that the *Warren* case is not authority for the application of *res judicata.*

The court in its opinion further said: " It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll. (Tax Law, § 28.) From these considerations it results that a prior judicial determination of value does not legally bind successor assessors. (*People ex rel. Eckerson* v. *Zundel*, 157 N. Y. 513.) It was by that decision suggested, to be sure, that a different result might consistently be predicated of the circumstance that no change in the personnel of an assessing board had occurred since a prior adjudication of value was made. We are now persuaded to say that we think this suggestion was unsound, for value in one year is not in issue thereafter nor are the assessors themselves real parties in interest. Accordingly, we conclude that (though the assessing officers have at all times been the same persons) the doctrine of *res judicata* can have no true application to the

issues of value in recurring assessment proceedings. (Cf. *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620.)"

The final order, in so far as it vacates and annuls assessments for alleged special franchise occupation, is affirmed. To the extent that the final order fails to vacate and annul assessments where the referee held the evidence establishes prior occupation and non-existence of streets and for the years that the final order fails to cancel and annul assessments for the crossing of Buffalo river (upper bridge), the final order should be reversed, without costs to either party.

HILL, P. J., McNAMEE and HEFFERNAN, JJ., concur; RHODES, J., dissents, with an opinion.

RHODES, J. (dissenting). Most of the occupancies here involved were assessed as special franchises for the year 1908, and such assessments were upheld upon review at Special Term. The referee herein held that such determination was only conclusive in favor of or against the Commission herein for the years in which its membership remained unchanged, evidently upon the theory that in other years there was not an identity of parties; in this I think he was in error and that the determination for the year 1908 is conclusive as to the question of taxability, regardless of whether the membership of the Commission remained the same, or changed from year to year, and regardless of whether his decision was legally correct under the rule established by the courts in other cases.

A decision of the court as to a determination of local assessors is not necessarily *res judicata* so as to bind future assessors (*People ex rel. Norwich Pharmacal Co.* v. *Porter*, 228 App. Div. 54; *People ex rel. Eckerson* v. *Zundel*, 157 N. Y. 513; *People ex rel. Hilton* v. *Fahrenkopf*, 279 id. 49), but this court has twice held that a decision covering a determination of the State Tax Commission as to the taxability of franchises is conclusive and binding upon the Commission as to subsequent assessments.

In *People ex rel. Rutland R. R. Co.* v. *State Tax Commission* (226 App. Div. 707) this court affirmed without opinion a decision of the court below. The opinion below was not published, but will be found at pages 105–106 of the record on appeal therein. In that case an order had been rendered annulling a special franchise tax upon the ground that bridges there in question were maintained over a non-navigable stream and that, therefore, the Commission had no authority to impose a special assessment thereon.

The Commission later attempted to impose special franchise assessments upon the same structures and in a certiorari proceeding to review such determination the court below and this court

held that the judgment in the previous proceeding was binding upon the Commission and that the Commission was barred by the former judgment in those proceedings from assessing a special franchise tax involving such bridges.

In *People ex rel. N. Y. C. R. R. Co.* v. *State Tax Commission* (241 App. Div. 780) the proceeding involved a special franchise assessment against a bridge of the relator in the towns of Cicero, Onondaga county, and Hastings, Oswego county. A previous assessment against such bridge was reviewed by certiorari in the court below where it was held that because the length of the bridge over the navigable part of the river was less than 250 feet it was not taxable as a special franchise. The decision was erroneous, as the bridge in question was 430 feet long from the vegetation line on the north to the vegetation line on the south of the river. Subsequently, the Commission again attempted to assess a special franchise tax against the structure. On review this court affirmed the decision of the referee below to the effect that the former decision was conclusive as to the taxability of the structure.

In the decision relative to the 1908 assessment of the franchises involved herein they were held assessable irrespective of whether there had been a prior occupancy by the railroad company before streets were established at the locations in question. Although this construction of the law was erroneous (See *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury*, 203 N. Y. 167), such error does not affect the finality and binding effect of the 1908 decision relative to the special franchises herein involved. In this respect there is no difference between errors of fact and errors of law. (*People ex rel. International Salt Co.* v. *Graves*, 267 N. Y. 149.)

The Commission has been and is one continuing body (See Laws of 1896, chap. 908, § 170; Laws of 1909, chap. 62, § 170; Laws of 1921, chap. 90, § 1; present Tax Law, § 170), though logically it would seem to be of no consequence whether the Commission is or is not one continuing body; even an increase in assessment made by local assessors has been questioned in the absence of an increase in its value or some change affecting its assessable value (*People ex rel. Warren* v. *Carter*, 119 N. Y. 557. See, also, *People ex rel. Norwich Pharmacal Co* v. *Porter, supra; People ex rel. Eckerson* v. *Zundel, supra*), although " the doctrine of *res judicata* can have no true application to the issues of value in recurring assessment proceedings." (*People ex rel. Hilton* v. *Fahrenkopf, supra*.)

As to occupancies not covered by the 1908 decision, where the railroad crosses over a subway which has been created in grade crossing eliminations to carry the street under the railroad, I think the relator is correct in asserting that the *tangible* structures involved

in improvements are not taxable as special franchises. (*Transit Comm.* v. *L. I. R. R. Co.*, 253 N. Y. 345; *People ex rel. N. Y., O. & W. R. Co.* v. *Tax Comrs.*, 215 id. 434; *People ex rel. B. & L. E. T. Co.* v. *Tax Comrs.*, 209 id. 496; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Purdy*, 215 id. 728; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Tax Comrs.*, 179 App. Div. 421; affd., 223 N. Y. 671.)

The referee vacated the assessment of the sea wall strip for the years 1917 and 1918, except as to an item of $900 conceded by the railroad. This property was conveyed to the railroad in 1915, and the assessments which have been made were for the years 1917 and 1918.

The assessments for intangibles as to Lord street, Smith street, Bass alley, Marilla street, North Division street (lengthwise) and Cornelia street were held taxable by the 1908 decision which, therefore, is conclusive upon the relator as to subsequent years, except where there may have been a change in the character of the occupancy, but the *tangible properties* carrying the streets under the railroad involving Lord street, Smith street and Mineral Springs road, were not involved in the 1908 decision, and are not assessable under the cases last above cited. The 1908 decision is also conclusive as to the occupancy involving Buffalo river except as it may be shown that the condition as to navigability has since changed; in the absence of such proof the occupancy is taxable.

The occupancies in North Division street, South Division street, Emslie street, Swan street and Fillmore avenue, in so far as they were held assessable by the 1908 decision, are by virtue thereof now assessable. Mineral Springs road subway was constructed later, in 1921, and is not, therefore, affected by the 1908 decision, but under the decisions is not assessable.

In brief, I think that the 1908 decision is conclusive as to the taxability of the occupancies here involved, which were covered by the decision; that as to streets carried under the railroad in grade crossing eliminations, the *tangible* structures are not taxable.

Subject to the modifications suggested herein, I think the decision should be affirmed.

The final order, in so far as it vacates and annuls assessments for alleged special franchise occupation, should be affirmed. To the extent that the final order fails to vacate and annul assessments where the referee held the evidence establishes prior occupation and non-existence of streets and for the years that the final order fails to cancel and annul assessments for the crossing of Buffalo river (upper bridge), the final order is reversed on the law and facts, without costs to either party.