[750 NYS2d 29]

# BANKERS TRUST CORPORATION, Respondent, v NEW YORK CITY DEPARTMENT OF FINANCE et al., Appellants.

First Department, November 19, 2002

**APPEARANCES OF COUNSEL**

*Kenneth I. Moore* of counsel (*Stephen L. Solomon* on the brief; *Hutton & Solomon LLP,* attorneys), for respondent.

*Robert J. Firestone* of counsel (*Paul T. Rephen, Elizabeth Dvorkin* and *Rita D. Dumain* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for appellants.

## OPINION OF THE COURT

FRIEDMAN, J.

Plaintiff (Bankers Trust), a banking corporation subject to the New York City banking corporation tax (Administrative Code of City of NY, tit 11, ch 6, subch 3, part 4), commenced this declaratory judgment action to challenge the denial by defendant New York City Department of Finance (the City) of Bankers Trust's claims for tax refunds for certain years. The refund claims were based on changes to Bankers Trust's state tax returns, which allowed certain deductions the State Department of Taxation and Finance (the State) had previously disallowed. When Bankers Trust filed the refund claims, the City adopted the state changes but nevertheless refused to issue any refund because of other adjustments that offset the claimed refunds. These adjustments involved the disallowance of certain deductions on the ground that the underlying expenses were incurred on behalf of foreign subsidiaries of Bankers Trust whose income was not included on Bankers Trust's returns. The IAS court granted summary judgment to Bankers Trust, and the City has appealed.

The issues raised by this appeal concern (1) the scope of the doctrine of exhaustion of remedies, (2) whether, upon the filing of a refund claim after expiration of the limitation period for deficiency assessments, the City may consider matters other than those raised by the refund claim itself, and (3) what is the meaning of Administrative Code § 11-678 (3) (c), which provides that, where a municipal refund is based on a change in federal or state returns, such refund shall be computed "without change of the allocation of income or capital upon which the taxpayer's return * * * was based."

### FACTS

In computing its "entire net income" (as defined by Administrative Code § 11-641 [a]) on its banking corporation tax returns for each of the tax years 1986, 1987 and 1993, Bankers Trust claimed a deduction for 17% of "interest income from subsidiary capital," as permitted by Administrative Code § 11-641 (e) (11) (i). In claiming this deduction, Bankers Trust included 17% of its interest income from its subsidiaries of the second tier and lower. Upon auditing each return, the City disallowed the deduction of interest from second-tier and lower subsidiaries. The City based this disallowance on its position that the Administrative Code authorized the deduction of subsidiary interest for interest received from subsidiaries of the first tier only.

The City's disallowance of the subsidiary interest deductions was consistent with adjustments the State made to Bankers Trust's New York State tax returns for 1986 and 1987 under the corresponding provision of the State's franchise tax on banking corporations (Tax Law § 1453 [e] [11] [i]). Bankers Trust, however, filed refund claims with the State, arguing that a subsequent decision of the State Tax Appeals Tribunal established that the State should not have disallowed the deductions. The ensuing state administrative proceedings were ultimately resolved by an August 1997 settlement agreement, under which, among other things, the State allowed the deductions for interest from second-tier and lower subsidiaries for several prior tax years.

As required by Administrative Code § 11-646 (e), Bankers Trust made a report to the City, in November 1997, of the changes in its taxable income that had been effected by the August 1997 settlement agreement with the State, including the State's allowance of the aforementioned deductions. Based on the correction of its state returns, Bankers Trust timely filed claims, pursuant to Administrative Code §§ 11-677 and 11-678 (3), for refunds from the City for the tax years 1986, 1987 and 1993, among others, in the amounts of $1,272,475, $1,300,107 and $3,824,106, respectively. In response to the refund claims, the City reaudited Bankers Trust's returns for these tax years.

In January 1999, the City notified Bankers Trust that it was disallowing the refund claims for 1986, 1987 and 1993 in their entirety. While it followed the State in allowing the deductions for 17% of interest from second-tier and lower subsidiaries, the City reexamined other aspects of the returns pursuant to its authority under Administrative Code § 11-646 (g), which empowers the City, as here relevant, "to adjust items of income or deductions in computing entire net income" in order to eliminate the effect of "any agreement, understanding or arrangement * * * between the taxpayer [here, Bankers Trust] and any other corporation [here, its foreign subsidiaries] * * * whereby the * * * income * * * of the taxpayer within the city is improperly or inaccurately reflected" (*compare* 26 USC § 482). As described below, the new matter the City raised resulted in a redetermination of the tax due for each year that totally offset the claimed refund.

The City found that certain of the operating expenses Bankers Trust had deducted in determining its entire net income should have been attributed to its "non-combined" foreign sub-

sidiaries, that is, foreign subsidiaries whose income was not included in Bankers Trust's tax returns and, as is apparently undisputed, were not subject to City taxation. In essence, the City took the position that, because these expenses were incurred on behalf of the foreign subsidiaries whose income was not included on Bankers Trust's returns, such expenses were not properly deductible by Bankers Trust. The City multiplied the resulting additional entire net income by Bankers Trust's "allocation percentage," i.e., the percentage of its income deemed to be derived from business within New York City pursuant to Administrative Code § 11-642 (b) (1), and multiplied the portion of the additional entire net income thus allocated to the City by the nine percent tax rate (Administrative Code § 11-643.5 [a]). Although the three-year statute of limitations (Administrative Code § 11-674 [1]) prevented the City from seeking to collect the additional amounts of tax due resulting from its calculations, those amounts completely offset the refunds Bankers Trust claimed.

Instead of challenging the denial of the refund claims through the administrative channels prescribed by statute (see Administrative Code §§ 11-680, 11-681), Bankers Trust commenced this action against the City in February 2000, seeking a judicial declaration that the City's denial of the refund claims was an ultra vires act beyond the City's statutory power. Bankers Trust's main argument in support of its motion for summary judgment was that, after expiration of the general three-year limitation period for assessments (Administrative Code § 11-674 [1]), the City, in reauditing municipal tax returns upon receiving a refund claim based on a correction to the taxpayer's corresponding federal or state returns, has authority to recalculate taxable income only for the limited purpose of giving effect to the decrease or increase in federal or state taxable income (Administrative Code § 11-678 [3] [d]). Bankers Trust asserted that the adjustment to taxable income on which the City based its denial of the refund was entirely "extraneous," and not in any way attributable, to the adjustment of the state return that occasioned the reaudit in the first place.

In addition to its primary argument that the City had authority to make only adjustments reflecting the state corrections, Bankers Trust made a second argument that the Administrative Code specifically prohibited the City's shifting of expenses from Bankers Trust to its foreign subsidiaries in determining the amount of the refund. Bankers Trust argued that this adjustment in fact constituted a "change of the alloca-

tion of income or capital upon which the taxpayer's return * * * was based," which Administrative Code § 11-678 (3) (c) forbids the City to make in computing the amount of the credit or refund to be granted based upon a correction of the federal or state return (*see also* Tax Law § 1087 [c] [1]).

In opposing Bankers Trust's motion and cross-moving for summary judgment in its own favor, the City argued, first, that the action should be dismissed on the ground that Bankers Trust had not exhausted its administrative remedies, and, second, that the City had not exceeded its statutory authority in denying the refund claims. In support of the second argument, the City contended that Administrative Code § 11-677 (1), which, like Tax Law § 1086 (a), authorizes the refunding of a tax "overpayment," requires that the City determine that there was actually an "overpayment" of tax before it may issue a refund. Therefore, the City argued, the scope of the audit to be conducted upon receipt of Bankers Trust's refund claims was not limited to the specific subject matter of the state changes.

The City also denied Bankers Trust's claim that the adjustment that offset the refunds constituted a "change of the allocation of income or capital" forbidden by Administrative Code § 11-678 (3) (c). The City took the position that the "allocation" to which Administrative Code § 11-678 (3) (c) refers is the "allocation percentage" of entire net income deemed to be derived from business within the City and therefore taxable by the City (*see* Administrative Code § 11-642 [b] [1]; *see also* Administrative Code § 11-643.5 [a] [banking corporation tax is imposed on "the taxpayer's entire net income, or *the portion thereof allocated to the city*" (emphasis added)]), which allocation percentage is calculated by the method set forth in Administrative Code § 11-642. The City noted that, in calculating the refund, if any, to which Bankers Trust was entitled for each year, it had used the very same allocation percentage that Bankers Trust had used in calculating its refund claim.

The IAS court granted summary judgment to Bankers Trust, declaring that Bankers Trust was entitled to the claimed refunds. The court found that the action was not barred by the failure to exhaust administrative remedies because Bankers Trust was contending that the City lacked statutory authority to make the adjustments it invoked as grounds for denying the refunds. The court then determined that the adjustments in question were ultra vires based on Bankers Trust's second argument that each adjustment was a change of allocation

prohibited by Administrative Code § 11-678 (3) (c). The court based this conclusion on its mistaken belief that the City "does not deny that the reallocation of expenses which it made in computing plaintiff's refund claim violated * * * Administrative Code § 11-678 (3) (c)."

ANALYSIS

■ We concur with the IAS court that this case falls within the exception to the exhaustion-of-remedies doctrine for challenges asserting that an administrative action was beyond the agency's statutory authority. Nevertheless, we conclude that the City acted within its statutory authority in making the challenged adjustments to Bankers Trust's entire net income that resulted in the denial of the refunds. We therefore reverse.

*Exhaustion of Administrative Remedies*

It is well established that a person aggrieved by the action of a government agency is generally required to exhaust the available administrative remedies before seeking judicial review of the agency's action (*see* Administrative Code § 11-681 [2]; *Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57). It is equally well established, however, that the exhaustion rule "is not an inflexible one," being "subject to important qualifications" (*id.*). Among the recognized qualifications to the exhaustion rule is an exception to its applicability where an agency's action is challenged as "wholly beyond its grant of power" (*id.*).

It is the exhaustion rule's exception for challenges to administrative action as beyond the scope of the agency's power that Bankers Trust contends to be applicable here. We agree. Bankers Trust is not challenging the adjustments that resulted in the denial of its refund claims as exercises of duly granted authority that were tainted by factual or mathematical errors, or that were otherwise arbitrary, capricious or irrational. Such a challenge would be subject to the exhaustion rule (*see e.g. Reader's Digest Assn. v Friedlander*, 100 AD2d 871, 872, *lv denied* 64 NY2d 601). Rather, Bankers Trust challenges the adjustments as unauthorized by the relevant statute (Administrative Code § 11-678 [3]), both because the adjustments were "extraneous" to the state changes that occasioned the audit after expiration of the statute of limitations for assessments, and because the adjustments violated the specific statutory prohibition of "change[s] of the allocation of income or capital" in computing the amount of refund due as the result of the state changes (Administrative Code § 11-678 [3] [c]). The propriety of Bankers Trust's maintenance of this declaratory judgment

action is highlighted by the fact that the challenges to the adjustments raise only pure issues of statutory construction, without any substantive factual dispute being involved (*see e.g. Dun & Bradstreet v City of New York*, 276 NY 198, 206; *Apex Air Frgt. v O'Cleireacain*, 210 AD2d 7, 8, *lv denied* 86 NY2d 712; *Matter of Herberg v Perales*, 180 AD2d 166, 169).

The City argues that the exception to the exhaustion rule for challenges to administrative actions allegedly in excess of the agency's power is limited to cases where there is a contention that the relevant statute is entirely inapplicable (*see e.g. Dun & Bradstreet v City of New York, supra*; *GTE Spacenet Corp. v New York State Dept. of Taxation & Fin.*, 201 AD2d 429, 430). Therefore, the City contends, the exception does not apply, since Bankers Trust does not dispute either that it was subject to the tax in question, or that the City was authorized to audit the refund claims.

Contrary to the City's view, the Court of Appeals has upheld the use of a declaratory judgment action to challenge administrative action where, although the agency's general authority to act on the plaintiff was unquestioned, the plaintiff contended that the agency had purported to exercise that authority in a manner beyond its statutory power (*see Watergate II Apts. v Buffalo Sewer Auth., supra* at 58 [exhaustion rule did not apply to plaintiff's challenge to sewer charges on the ground they constituted taxes beyond the authority's jurisdiction, based on the manner in which such charges were computed]). This is precisely the nature of the challenge in this case. While it is undisputed that the banking corporation tax was applicable and that the City had jurisdiction to conduct the audits in question, Bankers Trust contends that the City was without statutory authority to make the particular adjustments that resulted in denial of the refund claims. The challenge is based on the general nature of the adjustments, and does not require us to determine their accuracy by delving into the underlying facts or computations on which they were based. Under these circumstances, the exhaustion rule does not apply.

*Scope of Audit To Determine Amount of Refund*

Having established that this declaratory judgment action is not barred by the exhaustion rule, we proceed to consider the merits of the challenge to the City's action. As previously discussed, Bankers Trust's primary argument in the IAS court was that when the City conducts an audit to determine the amount of refund payable, if any, based on a claim filed after expiration of the three-year statute of limitations for assess-

ments, the scope of the audit is restricted to the proposed adjustments on which the refund claim is based (in this case, the adjustments that would conform the municipal return to the adjusted state return pursuant to Administrative Code § 11-678 [3]). The IAS court did not address this argument, instead deciding the case based on its acceptance of Bankers Trust's second argument (addressed in the next section of this opinion) that the adjustments were changes of allocation specifically prohibited by Administrative Code § 11-678 (3) (c).

We reject the contention that the scope of the audit of the refund claims was limited to the proposed adjustments on which the claims were based, i.e., adjustments corresponding to the state changes of entire net income. As the City correctly observes, the Administrative Code authorizes the Commissioner of Finance to issue a refund only if it is determined that the taxpayer made an "overpayment" of taxes for the relevant tax year (Administrative Code § 11-677 [1]).[1] Although the statute does not define "overpayment," it is well established in tax jurisprudence that, in the absence of any indication to the contrary, the term should be construed, in accordance with its usual sense, to mean "any payment in excess of that which is properly due," or "the payment of more than is rightfully due" (*Jones v Liberty Glass Co.*, 332 US 524, 531). Thus, upon the filing of a refund claim on any basis, the City is required to compute the correct tax for the year in question, and therefore may reexamine any aspect of the return. The audit is not restricted to consideration of the particular items of adjustment proposed in the refund claim, even where, as in this case, the refund claim is based on state changes that were made after the statute of limitations for the assessment of deficiencies had expired. While the expiration of the assessment limitation period precludes the City from collecting any unpaid deficiency that may be discovered (except to the extent provided by Administrative Code § 11-674 [3] [c]), no refund may issue unless it appears that the taxpayer in fact overpaid its taxes.

The conclusion that the City was authorized to reexamine all aspects of the return in determining whether any refund was

---

1. Administrative Code § 11-677 (1) provides:

"§ 11-677. *Overpayment*. 1. General. The commissioner of finance, within the applicable period of limitations, may credit *an overpayment of tax* and interest on such overpayment against any liability in respect of any tax imposed by any of the named subchapters of this chapter or [*sic*] on the taxpayer who made the overpayment, and the balance shall be refunded out of the proceeds of the tax." (Emphasis added.)

payable, notwithstanding that any deficiency assessment was time-barred, receives direct support from the decision of the United States Supreme Court in *Lewis v Reynolds* (284 US 281, *mod on other grounds* 284 US 599). In *Lewis*, the taxpayer filed a claim for a refund of its payment of a deficiency assessment. The refund claim, although timely, was filed after expiration of the limitation period for assessments of deficiencies. The Government, while it agreed with the taxpayer that the prior deficiency assessment should be reversed, rejected the refund claim based on a different adjustment that resulted in an additional amount of tax greater than the claimed refund. In sustaining the Government's position, the Supreme Court stated (*id.* at 283):

> "While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. *An overpayment must appear before refund is authorized.* Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." (Emphasis added.)

Bearing in mind that, as the parties agree, we may look for guidance to federal case law construing comparable provisions of the Internal Revenue Code, we find the Supreme Court's words in *Lewis* equally applicable to the present case.[2]

Before turning to the City's remaining argument, we note that the respondent's brief submitted by Bankers Trust includes an alternative argument in support of its position that the issues opened for reexamination by the refund claims were limited to the subject matter of the state corrections. Bankers Trust argues, apparently for the first time in opposition to this appeal, that the City agreed to such a limitation in the consent and waiver agreements the parties executed in 1992 and 1997. We cannot uphold the IAS court's decision on this ground, however, as a challenge to the denial of the refunds based on the consent and waiver agreements would not fall within any

---

2. The authorities cited by Bankers Trust on this point (*People ex rel. International Salt Co. v Graves*, 267 NY 149; *People ex rel. Jacob Doll & Sons v Graves*, 257 App Div 481; *Matter of Ethyl Corp.*, 1999 NY City Tax LEXIS 26, 1999-1 NY Tax Cases CT-158, CT-175—CT-178 [NY City Tax Appeals Tribunal, June 28, 1999]) are not to the contrary.

exception to the exhaustion-of-remedies doctrine. If the argument were not barred by Bankers Trust's failure to exhaust its administrative remedies, we would reject it as wholly lacking in merit. Nothing in the consent and waiver agreements purports to limit the scope of the issues the City would otherwise have legal authority to reexamine upon the filing of a refund claim.

*Whether the Challenged Adjustments Were Changes of Allocation Prohibited By Administrative Code § 11-678 (3) (c)*

■ Finally, we reach the issue on which Supreme Court ruled in Bankers Trust's favor. To reiterate, the question is whether the City violated the prohibition against any "change of the allocation of income or capital upon which the taxpayer's return * * * was based" (Administrative Code § 11-678 [3] [c]) when, in computing the amount of refund to be issued based on state changes made after expiration of the limitation period for deficiency assessments, it disallowed Bankers Trust's deduction of certain expenses based on a finding that such expenses were properly deductible by Bankers Trust's foreign subsidiaries not included in its returns. In considering this issue, our concern is limited to whether the adjustments violated the statutory prohibition. Again, we do not consider whether the adjustments were factually, mathematically or logically supportable, because the exhaustion rule forbids us to do so.

In regard to this issue, it is helpful to keep in mind how the tax due under the City's banking corporation tax is calculated. First, one determines the taxpayer's "entire net income," which is defined as "total net income from all sources which shall be the same as the entire taxable income * * * which the taxpayer is required to report to the United States treasury department" (Administrative Code § 11-641 [a] [1]), i.e., gross income less allowable deductions for expenses and losses, etc., subject to certain modifications and adjustments not relevant here. Next, where, as here, the taxpayer does business both within and without New York City, one determines the taxpayer's "allocation percentage," which is the fraction of worldwide entire net income that is deemed to be derived from business within the City. The allocation percentage is computed based on the percentages of the taxpayer's total deposits, receipts, and payroll that reflect business activity within the City (Administrative Code § 11-642; *see also* Administrative Code § 11-604 [3] [prescribing similar method for computation of allocation percentages under City's general corporation tax]). To derive the dollar amount of entire net income allocable to the City,

one multiplies entire net income by the allocation percentage. Finally, to derive the amount of tax due, one multiplies entire net income allocable to the City by the tax rate (here, nine percent).[3]

Turning to the question at hand, we again note that, in computing the amount to be refunded for each year, the only change the City made to the computations set forth in the refund claim was to increase entire net income by disallowing certain expense deductions. After deriving the increased entire net income figure, the City applied to it the identical allocation percentage that Bankers Trust had reported in the refund claim. Bankers Trust concedes this much in its appellate brief, acknowledging that the City made "no change in [its] allocation percentage." Nonetheless, Bankers Trust argues that the statutory prohibition of "change[s] of the allocation of income or capital upon which the taxpayer's return * * * was based" (Administrative Code § 11-678 [3] [c]) is not limited to changes of the allocation percentage computed, for purposes of the banking corporation tax, under Administrative Code § 11-642. We cannot agree.

First, it is clear from the statutory context that Administrative Code § 11-678 (3) (c) uses the words in question ("the allocation of income or capital upon which the taxpayer's return * * * was based") to refer specifically to the "allocation percentage" utilized to derive the amount of the taxpayer's entire net income or capital subject to municipal taxation (see Administrative Code § 11-642 [b] [1]). McKinney's Consolidated Laws of NY, Book 1, Statutes § 236 states:

> "In the absence of anything in the statute indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute." (See also *Riley v County of Broome*, 95 NY2d 455, 466; 97 NY Jur 2d, Statutes § 126.)

Here, the words "allocation" and "allocated" appear numerous times throughout chapter 6 ("City Business Taxes") of title 11

---

**3.** By way of a simplified example, assume a taxpayer subject to the banking corporation tax has gross income of $1,000,000 and allowable deductions of $800,000. That taxpayer would report entire net income of $200,000 ($1,000,000 less $800,000). Further assuming the taxpayer's allocation percentage to be 50% the taxpayer would report allocated income of $100,000 ($200,000 × 50%), and tax due of $9,000 ($100,000 × 9%).

of the Administrative Code, to which Administrative Code § 11-678 applies, and in almost every instance, the words are used in a manner that makes explicit that the reference is to the municipally taxable proportion of the taxpayer's entire net income or capital deemed to be derived from the City or located therein, as the case may be. For example, the words "allocation" and "allocated" are usually immediately followed by the phrase "to the city" or "within the city" when used in chapter 6; elsewhere in the chapter, "allocation" is immediately followed by the word "percentage." These usages are entirely inconsistent with the sense in which Bankers Trust would have us construe the word "allocation" in Administrative Code § 11-678 (3) (c), namely, as referring to the attribution of particular items of income or expense either to the taxpayer or to a separate but related entity not included in the same return. Accordingly, since nothing in Administrative Code § 11-678 (3) (c) indicates that it uses "allocation" in this sense, we construe the statute to prohibit only changes of the taxpayer's allocation percentage.[4]

Conceding that the City's adjustments did not change its allocation percentages, Bankers Trust essentially argues that the prohibition of Administrative Code § 11-678 (3) (c) should be applied beyond its literal scope to bar adjustments of entire net income that have the effect of shifting an increment of income to an entity subject to City taxation from related entities not subject to City taxation. The adjustments at issue did have this economic effect, since the City based its disallowance of certain of Bankers Trust's operating-expense deductions on the ground that such expenses were attributable to Bankers Trust's foreign subsidiaries, which apparently are not subject to taxation by the City. "This," contends Bankers Trust, "is as much a reallocation of income to the City as a change in the allocation percentage."

The flaw in Bankers Trust's reasoning is that entire net income and allocation percentage are independent variables in the tax-computation formula, and Administrative Code § 11-678 (3) (c) is concerned with allocation percentage only.

---

4. We recognize that the word "allocate" and its derivatives are commonly used in tax practice in the sense in which Bankers Trust would have us construe "allocation" in the statutory language. In fact, the City used the word "allocated" in this sense in the notice of proposed adjustment that accompanied the denial of the refunds, which stated, inter alia: "we *allocated* Home Office and Foreign Branch expenses to non-combined CFC's [controlled foreign corporations]" (emphasis added). As discussed above, however, this is not the kind of allocation prohibited by Administrative Code § 11-678 (3) (c).

Nothing in the statute prohibits an adjustment that, like those at issue here, increases entire net income (worldwide) by shifting a deduction claimed by the taxpayer to a related entity whose income is not included in the taxpayer's entire net income. Stated otherwise, the statute permits an adjustment disallowing a deduction based on a finding that the expenses generating the deduction were not incurred in the production of any part of the taxpayer's entire net income, *from either within or without the City*, and therefore were not properly deductible in computing entire net income (*see* Administrative Code § 11-646 [f] [4] [i]; *see also* Tax Law § 1462 [f] [4] [i]). Further, since the adjustments at issue were not based on any reexamination of the deposit, receipt and payroll records necessary for the computation of the allocation percentage (*see* Administrative Code § 11-642), the adjustments did not defeat the apparent purpose of Administrative Code § 11-678 (3) (c) to limit the time the taxpayer must retain such records. The challenged adjustments were therefore entirely consistent with the letter, purpose and spirit of Administrative Code § 11-678 (3) (c).

CONCLUSION

In sum, because Bankers Trust has chosen to pursue its attack on the City's denial of its refund claims through a declaratory judgment action, rather than through administrative proceedings, we approach this matter as one of statutory interpretation and disregard any particular factual or mathematical errors the City may have made. On this issue of statutory construction, we find that the Administrative Code did authorize the City to make adjustments of the kind that offset Bankers Trust's refund. When Bankers Trust filed its refund claims based on state changes, it placed at issue other aspects of its City returns for purposes of determining whether any refundable "overpayment" had been made, even though the statute of limitations for deficiency assessments had expired. Finally, the challenged adjustments did not violate Administrative Code § 11-678 (3) (c)'s specific prohibition against any "change of the allocation of income" in computing refunds based on state changes, because the City's adjustments, while increasing entire net income, made no change to Bankers Trust's allocation percentage computed under Administrative Code § 11-642.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Marcy Friedman, J.), entered May 7, 2001, which granted Bankers Trust's motion for summary judgment declaring that Bankers Trust was

entitled to the tax refunds it had claimed from the City for the tax years 1986, 1987 and 1993, and denied the City's cross motion for summary judgment, should be reversed, on the law, without costs, Bankers Trust's motion should be denied, the City's cross motion for summary judgment should be granted, and it should be declared that Bankers Trust is not entitled to such tax refunds.

ANDRIAS, J.P., ROSENBERGER and RUBIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered May 7, 2001, reversed, on the law, without costs, plaintiff's motion for summary judgment denied, defendants' cross motion for summary judgment granted, and a declaration issued that plaintiff is not entitled to certain tax refunds.